United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BRAYAN RODRIGUEZ,
Petitioner,
v.
KIRSTJEN NIELSEN, et al.,
Respondents.

Case No.18-cv-04187-TSH

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**

Re: Dkt. No. 1

## I. INTRODUCTION

Brayan Rodriquez has been in the custody of the Department of Homeland Security's Immigration and Customs Enforcement ("DHS") for more than a year. He was charged with removability based on a prior conviction that qualifies as an aggravated felony. *See* 8 U.S.C. § 1226(c)(1)(B). Rodriguez claims that he is being improperly detained under the mandatory detention provisions of the Immigration and Nationality Act, in violation of his Fifth Amendment right to due process. He seeks a writ of habeas corpus under 28 U.S.C. § 2241 ordering his release. Rodriguez alternatively requests a bond hearing on whether his continued detention is justified. The Court held a hearing in this matter on December 13, 2018. Having considered the relevant pleadings and arguments of counsel, the Court has determined that Rodriguez's arguments have merit. Accordingly, the Petition for Writ of Habeas Corpus is **GRANTED** for the reasons explained below.

## II. BACKGROUND

Rodriguez was initially placed in removal proceedings in 2010 pursuant to a notice to appear ("NTA"), in which DHS alleged that he was removable pursuant to 8 U.S.C. § 1182(a)(6)(l)(i) because he was present in the United States without being admitted or paroled or had arrived in the United States at a time or place other than as designated by the Attorney General. ECF No 1-5 at 24, 61. However, he was not properly served with immigration charges at that time. ECF No. 1-8 at 4. While in criminal custody, he was ordered removed in absentia in 2013. ECF No. 1-5 at 40; Decl. Dane Hubbard ¶¶ 4, 7, ECF No. 12.

On January 8, 2014, Rodriguez was convicted of conspiracy to possess methamphetamine with intent to distribute under 21 U.S.C. § 846 and sentenced to 60 months incarceration. ECF No. 1-1 at 7-11.

Upon his scheduled release from prison on October 17, 2017 DHS detained Rodriguez in immigration custody. Hubbard Decl. ¶ 6. He is currently at Yuba County Jail in Marysville, California. ECF No 12-2 at 4. He was initially set for a bond hearing on December 21, 2017, but on November 21, 2017 he was advised by the immigration judge that the court lacked jurisdiction to hold a bond hearing because he was subject to mandatory detention pursuant to 8 U.S.C. § 1226(c) because of his criminal conviction. ECF No. 1-2 at 2; Hubbard Decl. ¶ 8.

On December 11, 2018, after his master calendar hearing, Rodriguez obtained pro bono counsel with the San Francisco Public Defender's Office. ECF No 1-3. At this time, he was granted one continuance for attorney preparation, and his case was set for a hearing 49 days later. ECF No. 1-4.

Soon thereafter Rodriguez moved to terminate removal proceedings for lack of proper service of the initial NTA in 2010. ECF No. 1-8 at 2-4. The immigration judge found that service had been defective but allowed DHS to properly re-notice him, *id*., which it did by mail on February 8, 2018 and in person a month after that. *See id*. at 4; Proof of Service by Mail, ECF No. 1-6 at 10; Hubbard Decl. ¶ 11. When Rodriguez appeared for a master calendar hearing on March 6, 2018, the immigration judge denied his motion to terminate removal proceedings, determining that now proper notice had been effectuated. ECF No. 1-8 at 4.

On March 20, 2018, Rodriguez moved to terminate proceedings and to suppress alleged hearsay statements which DHS had used in the prior immigration proceeding to establish his alienage. ECF No. 1-10. In response, DHS filed evidence of Rodriguez's alienage in the form of a presentence investigation report and his Mexican birth certificate.[1] ECF No. 1-12 at 4-9. The immigration judge found both documents to be admissible and determined that they constituted clear and convincing evidence of Rodriguez's alienage. ECF No. 1-13 at 5.

On April 12, 2018, Rodriguez filed a motion to reconsider, which the immigration judge denied at a hearing on April 17, 2018. Hubbard Decl. ¶¶ 15, 16. At this same hearing the immigration judge found Rodriguez removable as charged by DHS and set his case for an individual hearing on June 29, 2018. *Id.*; ECF No. 1-16.

On June 29, 2018 Rodriguez presented his application for relief from removal and moved to terminate proceedings. Hubbard Decl. ¶ 17, 18. The immigration judge ordered him removed to Mexico on August 21, 2018 and denied his motion to terminate proceedings. ECF No. 12-1 at 3-7, 10. On September 5, 2018, Rodriguez filed an appeal with the Board of Immigration Appeals. ECF No. 12-2.

## III. LEGAL STANDARD

A federal district court may grant a writ of habeas corpus if the prisoner is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "A court, justice or judge entertaining an application for a writ of habeas corpus shall forthwith award the writ or issue an order directing the respondent to show cause why the writ should not be granted, unless it appears from the application that the applicant or person detained is not entitled thereto." 28 U.S.C. § 2243. "The court shall summarily hear and determine the facts, and dispose of the matter as law and justice require." *Id.*

Section 236 of the Immigration and Nationality Act, as amended, 8 U.S.C. § 1226, is an integrated provision governing the detention and release of removable aliens pending their

[1] The Court was able to verify through Rodriguez's submission that there was indeed a Mexican birth certificate attached. However, the presentence investigation report is heavily redacted, and the Court is unable to determine whether or not it discusses Rodriguez's alienage.



United States District Court
Northern District of California

removal proceedings. In section 1226(c), Congress listed categories of criminal aliens whom the Attorney General must detain without bond. *See* 8 U.S.C. §§ 1226(c)(1)(A)—(D).

Under Section 1226(c)(2):

> The Attorney General may release an alien described in paragraph (1) only if the Attorney General decides pursuant to section 3521 of Title 18 that release of the alien from custody is necessary to provide protection to a witness, a potential witness, a person cooperating with an investigation into major criminal activity, or an immediate family member or close associate of a witness, potential witness, or person cooperating with such an investigation, and the alien satisfies the Attorney General that the alien will not pose a danger to the safety of other persons or of property and is likely to appear for any scheduled proceeding.

Section 1226(c) mandates detention of any alien falling within its scope, and that detention may end prior to the conclusion of removal proceedings "'only if' the alien is released for witness-protection purposes." *Jennings v. Rodriguez*, —— U.S. ——, 138 S. Ct. 830, 847 (2018).

## IV. DISCUSSION

### A. Applicable Law

#### *i. Demore*

The Supreme Court upheld the mandatory detention of a noncitizen under section 1226(c) in *Demore v. Kim*, but the Court's opinion made clear it expected that detention to take a "very limited time." 538 U.S. 510, 529 n.12 (2003).

The Court emphasized in its decision multiple times that detention under section 1226(c) was "brief," *id*. at 513, because it "lasts roughly a month and a half in the vast majority of cases in which it is invoked, and about five months in the minority of cases in which the alien chooses to appeal." *Id*. at 530. The Court cited to its "longstanding view that the Government may constitutionally detain deportable aliens during the limited period necessary for their removal proceedings" in accordance with the "the narrow detention policy reflected in 8 U.S.C. § 1226(c)." *Id*. at 526. However, the Court did not address the kind of prolonged detention at issue in the present case. *See Casas–Castrillon v. Department of Homeland Security*, 535 F.3d 942, 950 (9th Cir. 2008) ("The Supreme Court upheld § 1226(c)'s mandatory detention provision in *Demore* but did so with the specific understanding that § 1226(c) authorized mandatory detention only for the

'limited period of [the alien's] removal proceedings' . . . . References to the brevity of mandatory detention under § 1226(c) run throughout *Demore*.") (citations omitted).

By contrast, where a noncitizen has been detained for a prolonged period or is pursuing a substantial defense to removal, due process requires an individualized determination that such a significant deprivation of liberty is warranted. *Demore*, 538 U.S. at 532 (Kennedy, J., concurring) ("individualized determination as to his risk of flight and dangerousness" may be warranted "if the continued detention became unreasonable or unjustified").

"'It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings.'" *Demore v. Kim*, 538 U.S. 510, 523 (2003) (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)). "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty" that the Due Process Clause protects. *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001); *see also id.* at 718 (Kennedy, J., dissenting) ("Liberty under the Due Process Clause includes protection against unlawful or arbitrary personal restraint or detention."). This fundamental due process protection applies to all noncitizens, including both removable and inadmissible noncitizens. *See id.* at 721 (Kennedy, J., dissenting) ("both removable and inadmissible aliens are entitled to be free from detention that is arbitrary or capricious"). And, it requires "adequate procedural protections" to ensure that the government's asserted justification for physical confinement "outweighs the individual's constitutionally protected interest in avoiding physical restraint." *Id.* at 690 (internal quotation marks omitted).

***ii. Tijani, Casas, Diouf***

After *Demore*, the Ninth Circuit decided several cases that provide guidance on what constitutes prolonged detention. In *Tijani v. Willis*, 430 F.3d 1241 (9th Cir. 2005), the Ninth Circuit held that the constitutionality of detaining a lawful permanent resident under § 1226(c) for over 32 months was "doubtful." *Id.* at 1242. To avoid deciding the constitutional issue, the Court interpreted the detention authority conferred by § 1226(c) as applying to the expedited removal of criminal aliens and held that "[t]wo years and eight months of process is not expeditious." *Id.* The Court then remanded Tijani's habeas petition to the district court with

directions to grant the writ unless the government provided a bond hearing before an immigration judge within sixty days. *Id.*

Next, the Ninth Circuit considered civil detention in the immigration context in *Casas–Castrillon v. Department of Homeland Security*, 535 F.3d 942 (9th Cir. 2008). There, a lawful permanent resident who had been detained for nearly seven years under § 1226(c) and then § 1226(a) sought habeas relief while his petition for review of his removal order was pending before the Ninth Circuit. *Id.* at 944–48. Following *Demore*, the Court of Appeals reasoned that § 1226(c) "authorize[s] mandatory detention only for the 'limited period of [the non-citizen's] removal proceedings,' which the [Supreme] Court estimated 'lasts roughly a month and a half in the vast majority of cases in which it is invoked, and about five months in the minority of cases in which the alien chooses to appeal' his removal order to the [Board of Immigration Appeals ("BIA")]." *Id.* at 950 (quoting *Demore*, 538 U.S. at 529). The Ninth Circuit held that to construe the statute to allow prolonged detention without adequate procedural protections, that is, bond hearings before an immigration judge, "would raise serious constitutional concerns." *Id.* at 950. Applying the canon of constitutional avoidance, the Court held that section 1226(a) "must be construed as requiring the Attorney General to provide the alien with such a hearing." *Id.* at 951 (emphasis omitted).

The Ninth Circuit used the six-month mark as the measure for a "prolonged" detention in *Diouf v. Napolitano*, 634 F.3d 1081 (9th Cir. 2011). In *Diouf* the Court specifically held that, after six months, "the alien's continuing detention becomes prolonged," and because "the private interest that will be affected by the official action . . . is more substantial; greater procedural safeguards are therefore required." *Id.* at 1091 (citations and quotation marks omitted). The Court described "a hearing before a neutral decision maker" as exactly the type of "reasonable" procedural safeguard that should be used "[w]hen detention crosses the six-month threshold and release or removal is not imminent." *Id.* at 1091–92.

Importantly, *Diouf* relied on *Casas* in reaching this conclusion, even though *Casas* involved an alien detained under section 1226(a), while *Diouf* involved an alien detained under section 1231(a)(6). The *Diouf* court acknowledged that "[t]he government may be correct that at

the margin, § 1231(a)(6) detainees have a lesser liberty interest in freedom from detention," but found that "the government makes too much of this distinction," because "the same important interest is at stake—freedom from prolonged detention." 634 F.3d at 1086–87.

Accordingly, the Court extended the holding of *Casas* to aliens detained under § 1231(a)(6).

> As was the case in *Casas–Castrillon*, prolonged detention under § 1231(a)(6), without adequate procedural protections, would raise "serious constitutional concerns." *Casas–Castrillon*, 535 F.3d at 950. To address those concerns, we apply the canon of constitutional avoidance and construe § 1231(a)(6) as requiring an individualized bond hearing, before an immigration judge, for aliens facing prolonged detention under that provision. *See id.* at 951. Such aliens are entitled to release on bond unless the government establishes that the alien is a flight risk or will be a danger to the community.

*See id.* at 1086.

The Ninth Circuit's recognition that six months is a substantial period of confinement is rooted in legal history. With few exceptions, "in the late 18th century in America crimes triable without a jury were for the most part punishable by no more than a six-month prison term . . . ." *Duncan v. State of La.*, 391 U.S. 145, 161 (1968). Consistent with this tradition, the Supreme Court has found six months to be the limit of confinement for a criminal offense that a federal court may impose without the protection afforded by jury trial. *Cheff v. Schnackenberg*, 384 U.S. 373, 380 (1966) (plurality opinion).

***iii. Jennings***

In *Jennings*, the Supreme Court reversed the Ninth Circuit's holding that noncitizens detained under 8 U.S.C. §§ 1225(b)(1), (b)(2), and 1226(c) were entitled to bond hearings every six months as a matter of statutory interpretation. *Jennings*, 138 S. Ct. at 842. *Jennings* held that the doctrine of constitutional avoidance was inapplicable because the plain language of 1226(c) was unambiguous and "makes clear that detention of aliens within its scope must continue 'pending a decision on whether the alien is to be removed from the United States.'" *Jennings*, 138 S. Ct. at 846 (emphasis omitted). *Jennings*, however, declined to reach the question whether prolonged detention under section 1226(c) without a bond hearing is unconstitutional, instead remanding that issue to the Ninth Circuit, *id*. at 851, which in turn remanded it to the district court.

United States District Court
Northern District of California

*See Rodriguez v. Marin*, 909 F.3d 252 (9th Cir. 2018). The Ninth Circuit did note in its remand order that "[w]e have grave doubts that any statute that allows for arbitrary prolonged detention without any process is constitutional or that those who founded our democracy precisely to protect against the government's arbitrary deprivation of liberty would have thought so." *Id.* at 256.

**B. Analysis**

The Supreme Court's repeated characterizations of the brevity of mandatory detention in *Demore* were based on calculations made by the Executive Office for Immigration Review which, back in 2003, had calculated that "in 85% of the cases in which aliens are detained pursuant to § 1226(c), removal proceedings are completed in an average time of 47 days and a median of 30 days." 538 U.S. at 529. "In the remaining 15% of cases, in which the alien appeals the decision of the Immigration Judge to the Board of Immigration Appeals, appeal takes an average of four months, with a median time that is slightly shorter." *Id.*

Throughout its opinion the Court noted that its decision is applicable to "brief" detention, leaving open the question of prolonged detention:

> Congress, justifiably concerned that deportable criminal aliens who were not detained would continue to engage in crime and would fail to appear for their removal hearings in large numbers, could require that such aliens be detained for brief period necessary for their removal proceedings

*Id.* at 510.

Thirteen years after the decision in *Demore*, the government admitted that the figures it provided to the Court, and which the Court relied on, contained "several significant errors." *See Letter from Acting Solicitor General Ian H. Gershengorn to Hon. Scott S. Harris* (Aug. 26, 2016), at 2, *Demore* (No. 01-1491) ("*Demore* Gov. Letter"). The errors concerning the average and median length of detention in removal proceedings in which there was *no* appeal did not undermine the Supreme Court's belief that such "proceedings are completed in an average time of 47 days and a median of 30 days," 538 U.S. at 529 – and in fact, the corrected numbers are even shorter (average of 39 days and a median of 14 days). *See Demore* Gov. Letter at 2.

But the situation is different in cases such as this one where the alien does appeal. First, the Supreme Court had inferred from the government's brief in *Demore* that in cases in which the

alien appeals, the time of detention was "about five months." 538 U.S. at 530. The government's 2016 letter clarified that this inference was incorrect because it assumed that the immigration judge-stage of proceedings in cases that were later appealed was the same length of time as in cases that were not later appealed, which was untrue. Second, the government's underlying data had been wrong. Correcting for both errors, the government explained, yielded (for years 1999-2001) an average length of detention in cases where the alien appealed of 382 days, or a little more than a year. *Demore* Gov. Letter at 3.

Current EOIR data demonstrate that many section 1226(c) detainees continue to be detained much longer than the brief period considered in *Demore*. In its brief submitted for the *Jennings* case, the government referred to updated data compiled by EOIR that tracks the length of detention for mandatory detainees through 2015. Pet. Br. n. 10, No. 15-1204, Aug. 26, 2016. That data reveal that, from 2003 to 2015, it continued to be true that in removal proceedings in which no appeal was filed, the average and median lengths of case completion were in the ballpark considered by *Demore*, although the average length of case completion has been trending upwards to 78 days as of 2015. Depending on the year, there have been between several hundred and two thousand cases per year (again in which no appeal was filed) in which detention lasted more than six months, several hundred per year in which it lasted more than a year, and between several dozen and more than a hundred per year in which it lasted more than two years. By contrast, in cases in which an appeal *was* filed, in most years the *average* length of detention was more than 300 days, or more than double the five-month estimate the Court relied on in *Demore*. The data from the *Jennings* case show that 460 members of the respondent section 1226(c) subclass were detained for an average of 427 days (over fourteen months) with some individual detention periods exceeding four years. Joint Appendix (Table 20), No. 15-1204, Aug. 26, 2016. Indeed, when the GAO conducted a study, it found that as of 2015, the median length of time it takes the BIA to complete an appeal of a removal order exceeds 450 days. *Immigration Courts: Actions Needed to Reduce Case Backlog and Address Long-Standing Management and Operational* Challenges, United States Government Accountability Office, https://www.gao.gov/assets/690/685022.pdf (last visited December 11, 2018) at 33.

United States District Court
Northern District of California

Here, Rodriguez has been detained more than 440 days, well outside the detention timeframe discussed in *Demore*. As of now, his detention continues to have no specific end date given that the BIA decision could take anywhere from months to years to resolve his appeal.

It is true that one reason Rodriguez's detention has lasted so long is that he is contesting removal, but he has not done so in bad faith. Certainly, the single continuance he requested for his counsel to get up to speed in no way explains his lengthy detention. *Compare Demore*, 538 U.S. at 531 (noting that petitioner's six-month detention was "somewhat longer than average," but that "respondent himself had requested a continuance of his removal hearing."). And to be fair, there is no evidence that the government has unreasonably delayed this removal proceeding either. The long period of time Rodriguez has been in custody primarily reflects the huge workload saddled on immigration judges and the BIA.

With respect to Rodriguez's habeas petition, as matters stand now, there is no controlling precedent for this Court to follow. The government argues that *Demore* is controlling, but the Ninth Circuit has already held that *Demore* did not consider the question of prolonged detention. *Casas*, 535 F.3d at 950. Also, the Supreme Court remanded *Jennings* for the Ninth Circuit to consider the constitutionality of prolonged detention without a bond hearing, 138 S. Ct. at 851, but if *Demore* had already resolved that issue, as the government contends, then the remand in *Jennings* is difficult to understand. For its part, the Ninth Circuit in turn remanded *Jennings* to the district court without resolving the constitutional question. *See Rodriguez*, 909 F.3d at 255-57. Thus, the Court of Appeals' constitutional avoidance cases have been overturned with no answer being provided on the constitutional question they had avoided deciding.

In the absence of controlling appellate authority, this Court concludes that the analytical framework set forth in *Tijani*, *Casas*, and *Diouf* supports Rodriguez's argument that detention becomes prolonged after six months and entitles him to a bond hearing. As noted, those decisions invoked the doctrine of constitutional avoidance to imply a statutory right to a bond hearing – a statutory right that does not survive the Supreme Court's holding in *Jennings* – but their reasoning was constitutional in nature. This is most evident in *Diouf*, in which the Ninth Circuit followed *Mathews v. Eldridge*, 424 U.S. 319 (1976), to conclude that due process requires a bond hearing

when detention exceeds 180 days, and then simply reasoned backwards to hold that such a hearing was statutorily required. 634 F.3d at 1091-92. The Court of Appeals' decision in *Tijani* is brief but likewise appears driven by constitutional concerns moreso than weighing conflicting plausible interpretations of section 1226(c). The Supreme Court's holding in *Jennings* that the Ninth Circuit's constitutional avoidance decisions were not even plausible as a matter of statutory interpretation, 138 S. Ct. at 836, tends to confirm that the Ninth Circuit's reasoning was constitutional in nature. Further, the six-month mark the Court ultimately arrived at in *Diouf* is consistent with the Supreme Court's decisions in *Zadvydas v. Davis*, 533 U.S. 678, 701 (2001) ("We do have reason to believe, however, that Congress previously doubted the constitutionality of detention for more than six months"), and *Demore*, 538 U.S. at 529-30 (upholding detention of six months without a bond hearing, and emphasizing that nearly all removal proceedings would take less than six months).

Accordingly, Rodriguez has established that his prolonged detention without a bond hearing violates his due process rights. He is entitled to an individualized determination by an immigration judge whether he is a danger to the community or a flight risk.

## V. CONCLUSION

The petition for a writ of habeas corpus is **GRANTED** as follows: **IT IS HEREBY ORDERED** that Respondents shall either release Petitioner from custody under an order of supervision or, within 60 days from the date of this order, afford him an individualized bond hearing before an immigration judge.

**IT IS SO ORDERED.**

Dated: January 7, 2019

THOMAS S. HIXSON
United States Magistrate Judge